The Judges pronounced their opinions.
JUDGE TUCKER.
The principal question in this cause depends upon the construction of the will of Robert Johnson, a most illiterate man, if we may trust the evidence arising out of the will itself, dated September 4, 1772, and proved and admitted to record eight days after; whence it may be inferred, that it was made in extremis, and when the testator was perfectly inops consilii. The testator, having bequeathed his soul to Almighty God, and desired to be buried in a christian-like manner, without further preamble proceeds thus: “It is my desire I gave and because (give and bequeath) to my son Robert Johnson 120 acres of land I bought of James Kitchen, and one cow, and one calf, and one heifer, and one feather-bed, and furniture, two ewes and twu lambs, and two sows, and one mare, saddle and bridle.” He then gives similar legacies of personals, to three of his daughters. Then 11. 5s. to his grandson Kitchen Johnson, to be paid to him at 20 years old; and then to his grandson Edmund Johnson (his heir at law) 5 shillings; then 5 shillings to another daughter; and concludes thus: “I give and because (bequeath) all rhe rest of my worldly estate to my well beloved wife M. J. to be at her dispoon (disposal) ingurin (during) her life, or widowhood, and afterwards to my son Britain Johnson to him for ever.” The question is, what estate did Robert Johnson take in the 120 acres above first devised?
I had occasion to remark the other day,' that the late President Pendleton had, in the case of Kennon v. M’Robert, clearly demonstrated (to my satisfaction at least) “that there are no precise words, nor any precise arrangement of them, nor any thing in any degree technical, necessary to the discovery of the testator’s leal and legal intention;” and, that “whenever, from the whole face and context of the will, we can collect the testator’s real intention, we are bound to give it legal effect.”(e) In the case of Rose v. Hill,(f) *219 Lord Mansfield speaking of the testator’s meaning, said, “the testator uses the same words in disposing of the real estate, as he does in disposing of the personal; and they explain each other.” Here the testator has done the same thing, 553 *in the same sentence. So far, then, we may consider it as explaining his intention to give an absolute property in the one as well as in the other.
There are other circumstances, apparent upon the face of the will, to corroborate this construction. He gives to his grandson (his heir at law) five shillings. Probably because he had given his father, in his life time, whatever he had intended to give him. Be this as it may, it creates a very strong presumption he had no intention that he should ever inherit this 120 acres. Ignorant as he was, he seems to have known that one person might enjoy property by a gift for life, and another for ever afterwards. This appears from the gift of all the rest of his worldly estate to his vi ife for her life, or during widowhood, and afterwards to his son Britain Johnson. Why then did he not express himself in like manner as to this land, if, indeed, he intended only to give a life-estate in it? These circumstances are so many evidences of intention, that I think we ought not to reject them, although they may come within none of the technical rules heretofore laid down by the courts of Westminster Hall.
Objection. The residuary clause to the wife, with remainder to his son Britain, will carry the fee, in this case, both from the heir at law and Robert. I think not. For the rule that you cannot infer a particular intention from a sweeping residuary clause was recognised in the case of Kennon v. M’Robert; and, according to my conception of that case, the residuary clause in that was equally as strong as in the present. It cannot be thought that the testator meant to give a life-estate to his wife in this land, or a remainder (after two life-estates) to his son Britain, by these general words, which may well be satisfied otherwise: for, from the affectionate terms in which he speaks of his wife, there can be no doubt that there was other estate upon which this residuary clause might operate, (a) I am therefore of opinion in favour of affirming the decree, not only of the Chancellor, but of the County Court, so far as it goes to this point.
JUDGE ROANE.
My opinion is, that Robert Johnson the younger took an estate for life only, in the premises in question. My reasons for this opinion were stated in the case of Wyatt v. Sadler, the other day; and I shall not repeat them. I am free, however, to admit, that, under the 554 opinion of the other Judges *in that case, a fee passed to Robert Johnson. There is no difference between the cases, so far as we are to be guided by precedents. My own opinion, therefore, is, that the decree ought to be reversed; but, in deference to the decision of this Court in the case of Wyatt v. Sadler, it must be affirmed.
JUDGE FLEMING.
In the construction of this, as of other wills, to discover the intention of the testator, we must take the whole together, and judge accordingly. The writer of this will was very illiterate, and totally unacquainted with the technical terms of the law; and the testator having given the land in the same clause, and in the same words used in disposing of personal property, (the absolute right in which passed to the legatee,) it appears to me that the testator did not intend a remainder, on the death of his son Robert, to his heir at law, to whom he gave a small pecuniary legacy, and says no more of him. And, in the last clause of the will, he gives all the rest of his worldly estate to his well beloved wife Martha Johnson, to be at her “dispoon ingurin” of her life or widowhood; (meaning, I suppose, at her disposal during her life, &c.) If Robert took only an estate for life in the land, his widow, by the residuary clause, would have taken a remainder during her life, or widowhood, as such remainder was not otherwise disposed of by the will; and it could never, I conceive, have been in the contemplation of the testator to make such remote provision for his wife, on a supposition that she would survive his son Robert. But, on a presumption that Robert took an estate in fee, the whole of the will (though written in very untechnical language) seems perfectly consistent. I am therefore of opinion, that Robert took a fee in the land in controversy; and, if I had doubted on the subject, it haying been already so decided by two different Courts, I should not now disturb the decree.
Decree affirmed.*

 Ante, p. 541, Wyatt v. Sadler.

 3 Burr. 1884.

 1 Wash. 111, Kennon v. M’Robert.

Note. It seems, from this case, that a joint suit in Chancery may be maintained in behalf of a widow and heirs or devisees, to recover land in which the widow has a right to dower, on a bill stating a case in other respects proper for a Court of Law, (or alleging another circumstance, apparently with a view to give the Court of Equity j urisdiction, without proof of such circumstances,) and merely praying a decree for the land, and for general relief, without specially claiming dower, or praying that it maybe assigned; that, having jurisdiction as to the right of dower, the Court will entertain it for the whole subj ect in controversy, and, after decreeing the land to the plaintiffs, will go on to decree assignment of dower to the widow, partition among the other plaintiifs, and rents and profits against the defendant.
See 2 Atk. 3, Cooke v. Martyn, in which it is said that “praying general relief is sufficient, though the plaintiff should not be more explicit in the prayer of his bill;” and ibid. 141, Grimes v. French; “though you pray general reliei by your bill, you may at the bar, pray a particular relief that is agreeable to the case you make by your bill; but you cannot pray a particular relief which is entirely different from the case;” or “inconsistent with it.” Cooper’s Eq. Pleading. 14, and the cases there cited. For example, the plaintiff may have an account for rents and profits under the prayer for general relief, if the case made by the bill entitle him to it; but not otherwise. 3 Atk. 132. — Note in Original Edition.